# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| W. KOROL SELLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14-755 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| AUTHORHOUSE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

### I. MEMORANDUM

Pending before the Court is Defendant Authorhouse, LLC ("Defendant")'s Motion to Dismiss for Lack of Subject Matter Jurisdiction (**Doc. 86**). For the reasons that follow, Defendant's Motion to Dismiss (**Doc. 86**) will be DENIED.

#### A. Background

Plaintiff W. Korol Selley ("Plaintiff") is the author of a novel titled "Magic Men." (Am. Compl. (Doc. 59) at ¶¶ 10, 12). Plaintiff registered a version of this novel with the Copyright Office on July 23, 1981 (the "1981 Work"). (Doc. 59, Exh. 8).

The Amended Complaint summarizes the plot of "Magic Men" as follows: "Set in a world steeped in folklore of a legendary race of men able to do Magic and take the soul of another, the Hill Legend are rhymes lowlanders recite in part to their children at bedtime and are the basis of fabricated tales to further enthrall their listeners. After an abandoned newborn, as is described in the rhymes is found on a Landmaster's landholdings, the Winter thaw gives up the dead highlander mother. When it is discovered that her child is in Lord Ryechim's care, his

1

influence and wealth amount to nothing when it comes to the fear and hatred directed at the highlander babe. Declared as his son and heir, as Stev reaches the age of maturity, Lord Ryechim realizes what is meant by references to the "Magic" in the Hill Legend. It is the Magic of Imagination, in that one such as the young Lord can use his mind to imagine the past, present, and future events of another and know the alternatives . . . excluding his own. To find his son's true identity and the reason for the abandonment, they leave the lowlands in search of the legendary highlands, the home of the Magic Men." (Doc. 59 at ¶ 13).

Defendant AuthorHouse, LLC published and sold two of Plaintiff's works, including a 2004 version of Plaintiff's novel "Magic Men" (the "2004 Work"). (Id. ¶ 12). Plaintiff alleges that Defendant published these works "under a limited license to sell paperback editions," and "did not have authority or a license to sell" these books as electronic books ("e-books"). (Id. ¶¶ 15-16). Plaintiff allegedly discovered that Defendant had published one of her works as an e-book, and, thereafter, filed a lawsuit against Defendant. (Id. ¶¶ 18-23; ECF No. 2:12-cv-01894 (W.D. Pa. 2012)). The parties entered into a settlement agreement on August 19, 2013 ("Settlement Agreement"). (Doc. 59 at ¶ 24). According to Plaintiff, the Settlement Agreement required Defendant "to stop selling Plaintiff's books." (Id. ¶¶ 24-26). Plaintiff alleges that she later discovered that Defendant continued to sell both her books, including the 2004 Work, in the United States and internationally. (Id. ¶¶ 34-52).

Plaintiff filed the instant lawsuit on June 13, 2014, alleging that Defendant continues to publish and sell her books in violation of the Settlement Agreement and copyright law. (Compl. (Doc. 1) at ¶¶ 31-32, 54-81). Defendant filed its Answer and Counterclaim on April 1, 2014. (Answer. (Doc. 21)). Plaintiff filed the Amended Complaint – currently the operative pleading –

in August 2015. (Doc. 59). Count II of the Amended Complaint asserts that Defendant's continued sale of the 2004 Work constitutes copyright infringement.

On March 8, 2016, Defendant filed the instant Motion to Dismiss, seeking to dismiss Count II of the Amended Complaint for lack of subject matter jurisdiction. (Doc. 86). Defendant argues that the 2004 Work is not registered with the Copyright Office as required by 17 U.S.C. § 411(a), which provides that "…no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." In its opening brief, Defendant argues that "the registration requirement is jurisdictional." (Doc. 87 at 5). However, in its reply brief, Defendant seems to concede that it is not. (Doc. 99 at 1). In Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237 (2010), the United States Supreme Court clarified that Section 411(a) is not a jurisdictional requirement but rather a necessary precondition to filing a copyright infringement claim. Accordingly, the Court will construe Defendant's Motion as a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) rather than one filed pursuant to Rule 12(b)(1).

B. **Standard for Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

The Court notes that the parties have attached to their briefing various documents,

including:  excerpts from deposition exhibits (Doc. 87-1), excerpts from the transcript of Plaintiff's deposition (Docs. 87-2 and 98-2), Plaintiff's affidavit (Doc. 98-1), and excerpts from the 1981 and 2004 Works (Docs. 98-3 and 98-4).  The general rule is that a court may not consider evidence submitted by the parties outside the pleadings when deciding a motion to dismiss without converting it to a motion for summary judgment.  Fed.R.Civ.P. 56(c).  Here, the Court will not consider the extraneous documents submitted by the parties, with the exception of the excerpts from the 1981 and 2004 Works (Docs. 98-3 and 98-4), attached to Plaintiff's response brief.  The 1981 and 2004 Works are central to Plaintiff's claims in the Amended Complaint, and Defendant does not dispute the authenticity of these excerpts.  <u>Pension Benefit Guar. Corp. v. White Consol. Indus</u>., 998 F.2d 1192, 1196 (3d Cir. 1993) (a motion to dismiss is not converted to a motion for summary judgment under Rule 56 if a party attaches to its briefing an "undisputedly authentic document . . . if the plaintiff's claims are based on the document").  Furthermore, no party has objected to the Court's consideration of these excerpts.

**C.  Legal Analysis**

Defendant moves to dismiss Count II of the Amended Complaint, arguing that Plaintiff did not register the 2004 Work and thus failed to satisfy a necessary precondition to filing a copyright infringement claim.  For the reasons discussed below, the Court will deny Defendant's motion.

The critical facts at issue are not in dispute.  The parties agree that Plaintiff owns a valid copyright in the 1981 Work but did not register the 2004 Work. (Doc. 87, at 3; Doc. 98, at 8).  Furthermore, the parties agree that the 2004 Work is an unregistered "derivative work" of the copyrighted 1981 Work.  (<u>See</u> Doc. 87 at 13-15; Doc. 98 at 10).  A "derivative work" is defined in the Copyright Act as "a work based upon one or more preexisting works . . . [including a]

4

work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." 17 U.S.C. § 101. It is well established that the owner of a derivative work may maintain a copyright action against an alleged infringer, based on any infringement of the pre-existing work from which the derivative work is derived. See Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 275 F. Supp. 2d 543, 556 (D.N.J. 2003) ("Registration of the underlying copyrighted work is sufficient to sustain a copyright infringement action pertaining to the derivative works. . . ."); accord SimplexGrinnell LP v. Integrated Sys. & Power, Inc., 642 F. Supp. 2d 206, 213 (S.D.N.Y. 2009) (holding that "since 'a derivative work by definition consists of matter that would be infringing if it had been derived from the preexisting work without the copyright proprietor's consent, it follows analytically that the owner of a registered underlying work, in that capacity alone, should be able to maintain' a suit for copying an unregistered derivative work." (quoting 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.16[B][2][b] (2008))); see also Brownstein v. Lindsay, 742 F.3d 55 (3d Cir. 2014) (holding, in the joint authorship context, that "unauthorized creation of a derivative work, which incorporates the original work, constitutes an infringement of the underlying work.").

Here, as Plaintiff argues, the "2004 Work contains elements of expression that are found in the 1981 Work." (Doc. 98 at 12). Indeed, a comparison of the excerpts from the two works provided by Plaintiff demonstrates that many passages in the 2004 Work are lifted verbatim from the 1981 Work. (Doc. 98, at 4-6). Furthermore, although Defendant argues that the language and structure of the two works differ somewhat, it does not argue that Plaintiff substantially changed either the plot or the characters in the 2004 version of the novel. (See Doc. 87 at 14 (describing the changes between the 1981 and 2004 Works as follows: "Strikingly novel

5

wording appears throughout the 2004 Work that does not appear in the 1981 Work. The sequence of passages has been substantially rearranged and at least one whole chapter has been omitted.")). Thus, the Court finds that the unregistered, derivative 2004 Work contains protectable elements found in the registered 1981 Work, and holds that Plaintiff's registration of the 1981 Work is sufficient to sustain a copyright infringement action pertaining to 2004 Work. See Video Pipeline, 275 F. Supp. 2d at 556.

Defendant's arguments to the contrary are unpersuasive. Defendant claims that Lewinson v. Henry Holt & Co., LLC, 659 F. Supp. 2d 547 (S.D.N.Y. 2009) "supports AuthorHouse's argument." (Doc. 99 at 4). The Court disagrees. In Lewinson, the court considered whether the defendants committed copyright infringement by copying an unregistered manuscript of a children's book that was derivative of an earlier registered manuscript. The court explained that, while an action for infringement of a derivative work could be maintained, "[i]n considering such a claim, . . . the Court must compare the allegedly infringing work with the Registered Work, and not with the Unregistered [Work]." Lewinson, 659 F. Supp. 2d at 562 (citing Well–Made Toy Mfg. Corp. v. Goffa Int'l Corp., 354 F.3d 112, 116 (2d Cir. 2003)). Applying this test, the court found that the defendants' allegedly infringing work and plaintiff's registered work were not "substantially similar." Among other things, the court found that the two works did not share the same plot or characters. See id. at 571-72 ("To the extent these simple scenes constitute part of the works' plot, these works are not substantially similar in their plots."); id. at 574 ("There are no protectable similarities between the characters depicted in the Registered Work and those depicted in the Katz Work."). In contrast, here, it is undisputed that the plot and characters in the 1981 and 2004 Works are substantially similar.

Likewise, contrary to Defendant's contention, Well–Made Toy does not stand for the proposition that the Copyright Act bars all copyright claims based on an unregistered derivative work. Rather, Well–Made Toy's holding barring a copyright claim based on an unregistered derivative work turns on the fact that the allegedly infringing work "only copied expressive elements" of the unregistered derivative work which "d[id] not appear in any work whose copyright ha[d] been registered." Well–Made Toy, 354 F.3d at 116. Where, as here, the "unregistered version[] 'incorporate[s] protectable elements of [a registered version] and were [allegedly distributed] . . . in an unauthorized manner, the infringement of the underlying work, through the unauthorized [distribution] of the derivative work [ ], serves as the basis for ... [an] action based on the registration of the underlying work.'" SimplexGrinnell, 642 F. Supp. 2d at 214.[1]

## II. ORDER

For the reasons stated above, Defendant's Motion to Dismiss (**Doc. 86**) is DENIED.

IT IS SO ORDERED.

September 20, 2016                                s\Cathy Bissoon
                                                  Cathy Bissoon
                                                  United States District Judge

---

[1] Although the Court finds that Plaintiff can maintain a copyright infringement claim against Defendant for its alleged infringement of the 2004 Work, that claim is limited to only those protectable elements also found in the 1981 Work. See Jamison Bus. Sys., Inc. v. Unique Software Support Corp., No. 02–CV–4887, 2005 WL 1262095, at *8 (E.D.N.Y. May 26, 2005) ("While the additions to the program constitute elements of a derivative work, and the modified versions must be registered as derivative works in order protect the modifications, *any original unmodified source code is entitled to protection as part of the original work registered in 1986*.") (emphasis added). The Court does not reach Plaintiff's alternative argument that she can "simply file a registration statement for the 2004 Work to protect any of the material considered original in the 2004 Work." (Doc. 98 at 10).

CC (via ECF email notification):

All Counsel of Record